UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA,         )
                                    )
               Plaintiff,     )
                                    )
   VS.                       ) No. 2:23-CR-0008-Z-BR-1
                                    )
ERNEST JONES, III,          )
                                    )
               Defendant.    )
_____)

ELECTRONICALLY-RECORDED REARRAIGNMENT HEARING
BEFORE THE HONORABLE LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE
MARCH 24, 2023
AMARILLO, TEXAS

FOR THE PLAINTIFF:

    ANNA MARIE BELL
    UNITED STATES ATTORNEY'S OFFICE
    500 South Taylor Street
    Amarillo, TX  79101
    (806) 324-2399


FOR THE DEFENDANT:

    CHANNY F. WOOD
    WOOD LAW FIRM
    P.O. Box 1439
    Amarillo, TX  79105
    (806) 372-9663

    Proceedings recorded electronically; transcript produced by computer-aided transcription.

_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

(Hearing commenced at 9:18 AM.)

COURT SECURITY OFFICER:  All rise.  The United States District Court for the Northern District of Texas, Amarillo Division, is now in session.  The Honorable Magistrate Judge Lee Ann Reno is presiding.

You all may be seated.

THE COURT:  The Court calls Cause No. 2:23-CR-8-Z-BR-1, *United States of America versus Ernest Jones III.*

MS. BELL:  The United States is ready, Your Honor.

MR. WOOD:  Channy Wood for the Defendant.  We're ready to proceed, Your Honor.

THE COURT:  All right.  Good morning, Mr. Jones.

THE DEFENDANT:  Good morning.

THE COURT:  Would you go ahead and stand for me, please, sir?

All right.  Can you raise your right hand for me?

Do you solemnly swear that the testimony you will give today will be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  You can go ahead and put your hand down.

EXAMINATION BY THE COURT:

Q.   And are you "Ernest Jones, III"?

A.   Yes.

Q.   Do you intend to plead "guilty" today to Count One of an Indictment that charges you with Controlled Substances User or Addict in Possession of a Firearm?

A.   Yes.

Q.   Before I can recommend to our District Judge -- he's the other judge in our building -- that he accepts that plea of "guilty" you intend to enter, I will have to ask you a lot of questions.  There's two reasons that I have so many questions at a hearing like this.

First, I have to make certain that you understand all of that rights you'll be giving up by pleading "guilty;" and then

Second, I will ask a set of questions towards the end of the hearing to make certain that we have facts in your case that support a guilty plea.

Do you understand why I'll have so many questions today?

A.   Yes.

Q.   Some of those questions will be long.  So if for that reason or any other reason you think I've asked something that is confusing, will you feel comfortable telling me that?

A.   Yes.

Q.   Do you understand that you have the right to talk privately with your attorney at any point during the hearing?

A.   Yes.

Q.   If you answer my questions this morning then without

telling me that I've asked something confusing or without telling me you want to talk to your attorney, can I then assume that you have understood what you answered?

A.   Yes.

Q.   Do you understand that I have placed you under oath and if you were to answer any of these questions falsely, the Government could prosecute you for perjury or for making a false statement?

A.   Yes.

Q.   Okay.  I know I've said your name already as we have started the hearing, but we are making a record of everything that happens in court.  And so for purposes of that recording, would you tell me what your full name is?

A.   Ernest Jones, III.

Q.   Thank you.  How old are you, Mr. Jones?

A.   Twenty-nine.

Q.   How far did you go in school?

A.   GED.

Q.   In the last 12 months have you been treated for any kind of mental illness?

A.   No.

Q.   In the last 12 months have you been treated for any type of addiction to narcotic drugs?

A.   No.

Q.   Today, are you under the influence of any drug, alcoholic

beverage, or medicine of any kind?

A.    No.

Q.    While you have been at the Randall County Jail, have you been taking any type of medicine on a daily basis?

A.    No.

Q.    One of the things that we will do during the hearing is to talk about the different documents that you signed to get ready to come to court today.  The document I want to visit with you about first is one that I have a copy of.  It's called the "Consent Regarding Entry of a Guilty Plea."

I know you signed it, but I still have to make an explanation about the purpose of that document and then ask a couple of questions.

What this consent document does is explain that you have a choice in terms of which of the two judges in our building hears the guilty plea.  You do have the right to have our other judge, who is the District Judge, hear the guilty plea or you can agree to have me, as the United States Magistrate Judge, hear the guilty plea this morning, then make a recommendation to our District Judge that he either accepts or rejects the guilty plea.

Before you signed the consent document, did you have an opportunity to talk to your attorney about it and discuss which of the two judges would hear your plea?

A.    Yes.

Q.   Do you have any questions this morning in terms of which of us will hear your plea?

A.   No.

Q.   Would you like to go forward then with having me, as the United States Magistrate Judge, be the one to hear the guilty plea?

A.   Yes.

THE COURT:   I find that the content has been knowingly and voluntarily given, and we will proceed with your hearing.

Q    (By The Court:) Have you previously been provided with a copy of the Indictment in your case?

A.   Yes.

Q.   Did you have a chance to read that document yourself?

A.   Yes.

Q.   Did you also have the chance to talk to your attorney not only about the charges in the Indictment but also about your entire case?

A.   Yes.

Q.   At this point, Mr. Jones, you have a choice that you can make.  We can have the Government's attorney read Count One of the Indictment out loud or you do have the ability to waive or to give up the reading of that Indictment.

What would you like to do?

A.   Just waive it.

Q.   There is one thing that still does have to be read at this

point, Mr. Jones.  That is what we call the "essential elements" of the offense charged in Count One of the Indictment.  And those are the facts that would have to be proven during any jury trial with competent evidence and beyond a reasonable doubt before you could be found guilty.

The same elements that are about to be read were listed out for you in one of the documents in your case.  That document is called your "Factual Resume."  After these elements are read, I will ask you if you understand the nature of the offense to which you intend to plead "guilty".

MS. BELL:  Controlled Substance User or Addict in Possession of a Firearm:

First, that the Defendant knowingly possessed a firearm as charged;

Second, that before the Defendant possessed the firearm, the Defendant was an unlawful user of or addicted to a controlled substance;

Third, that when he possessed the firearm, the Defendant knew he was an unlawful user of or addicted to a controlled substance; and

Fourth, the firearm possessed traveled in or affected interstate or foreign commerce.  That is, before the Defendant possessed the firearm, it had traveled at some time from one state to another or between any part of the United States and any other country.

Q     (By The Court:) Having heard those elements being read out loud, do you understand the nature of the offense to which you intend to plead?

A.    Yes.

        THE COURT:  Counsel, are you satisfied your client understands the nature of the offense?

        MR. WOOD:  Yes, Your Honor.

        THE COURT:  I find that Mr. Jones does understand the nature of this offense charged by Count One of the Indictment to which he intends to plead "guilty."

Q     (By The Court:) Sir, are you fully satisfied with your attorney and the representation and advice you've received in the case?

A.    Yes.

Q.    I have on my computer electronic copies of the same Plea Agreement and Supplement to the Plea Agreement that appears to be on the table in front of you.  We can have those documents also read out loud, if you would like, or you do have the ability to waive the reading of your Plea Agreements.

     What would you prefer to do?

A.    Just waive them.

Q.    Okay.

        THE COURT:  Counsel, would you join in the waiver?

        MR. WOOD:  I do, Your Honor.

Q     (By The Court:) At any time in the past, Mr. Jones, did

you have the opportunity to fully read both of those Plea
Agreements?

A.    Yes.

Q.    Did you also have the opportunity to talk to your attorney
about everything that is in the two agreements?

A.    Yes.

Q.    Do you understand all of the terms that are contained in
the Plea Agreements between you and the Government?

A.    Yes.

        THE COURT:    Counsel, are you satisfied your client
understands his agreements?

        MR. WOOD:    Yes, Your Honor.

Q    (By The Court:) Mr. Jones, do you have any changes or
corrections to make to your Plea Agreements?

A.    No.

        THE COURT:    Counsel, would you have any to make?

        MR. WOOD:    No, Your Honor.

Q    (By The Court:) Mr. Jones, I'm going to look on my copies
at the last page or pages of both of these plea documents and
check signatures, and then I'll have some questions.

        (Pause)

Q    (By The Court:) In reviewing the last pages of each of
these two Plea Agreements, it appears that you did sign both of
those earlier this month.  Is that true?

A.    Yes.

THE COURT:  Counsel, did you sign both, also?

MR. WOOD:  I did, Your Honor.

Q    (By The Court:) Mr. Jones, these two sets of documents that you and I have just talked about do have different promises or agreements in them between you and the Government about various things in your case.  All of those promises and agreements are written down within the documents you've signed. What I'm going to ask you now, though, relates to something a little bit different than that.

Are there any other promises or agreements in your case that have not been written down within these plea documents but that you are still using or relying on in some way in order to plead "guilty?"

A.    No.

Q.    Has anyone forced you or threatened you in any way to plead "guilty?"

A.    No.

Q.    Are you pleading "guilty" voluntarily and of your own free will because you are guilty?

A.    Yes.

Q.    By pleading "guilty" to a felony offense, if our District Judge accepts the plea, you will then be adjudged guilty, and that judgment of guilt can deprive you of various civil rights that you have.  Another way to say that is by being found guilty in your case, you may no longer be able to vote, to serve on a

jury, to hold public office, or to possess any kind of a firearm.

     Do you understand?

A.   Yes.

Q.   Do you understand, also, that under the Constitution and laws of the United States, you have the right to plead "not guilty" and then you would be entitled to have a trial in front of a jury on these charges in the Indictment?

A.   Yes.

Q.   Are you aware that at any jury trial, as well as all the other parts of your case, you would be entitled to have your lawyer assist you?

A.   Yes.

Q.   At any trial, you are presumed to be innocent, and it is the Government who has the burden to prove you guilty by using competent evidence and by a standard of "beyond a reasonable doubt."

     Do you understand?

A.   Yes.

Q.   During a trial, the Government's witnesses would have to come into the courthouse, and they would testify in front of you.  That way, you could see and hear what they were saying, and then your attorney could also ask some questions.

     Do you understand?

A.   Yes.

Q.    Do you understand, also, that at trial you would have the right to testify and present evidence in your own defense, if you wanted to do that voluntarily, but that you could never be forced to testify against yourself?

A.    Yes.

Q.    Do you understand that if you decided not to testify or present evidence in your own defense, those facts could not be used against you at trial?

A.    Yes.

Q.    Are you aware that your lawyer could issue legal documents called "subpoenas" that would require witnesses who were favorable to your side of the case to come into the courthouse and then they could testify on your behalf?

A.    Yes.

Q.    Do you understand that if you do plead "guilty" this morning and the District Judge then accepts the plea, you will give up your right to have a trial in front of a jury as well as all these other rights I've described?

A.    Yes.

Q.    Do you understand also, that by pleading "guilty" today, you will give up your right not to testify against yourself?

      And that's because I will ask questions during the hearing to establish that you are guilty, and you'll have to admit your guilt.

A.    Yes.

Q.   At this point in your hearing, Mr. Jones, I need to make certain that you do understand what the possible penalties and consequences are if there's a conviction on this offense in Count One.  These were all listed out for you within Paragraph 3 of the Plea Agreement that you signed.

The Government's attorney will go ahead and read those out loud for us, though.  And once that's done, I'll ask if you understand.

MS. BELL:  The penalties the Court can impose include:

Imprisonment for a period not to exceed ten years;

A fine not to exceed $250,000 or twice the money gained to the Defendant or twice the money lost to any victim;

A term of supervised release of not more than three years;

A Mandatory Special Assessment of $100;

Restitution to victims or to the community;

The Defendant to pay the costs of incarceration and supervision; and

The forfeiture of any property listed in the Plea Agreement.

Q    (By The Court:) Having heard all of those possible penalties and consequences being read out loud, do you understand each of them?

A.   Yes.

Q.   As that was read, there was a phrase that was used.  In the

federal courts it's what we call "supervised release." I want to explain a couple of things about that.

First of all, supervised release is a time period, meaning for months or years, that will follow your release from any term of imprisonment you might receive in the case.

While you are on supervised release, our District Judge will give you terms and conditions that you have to follow. Another way to say that is that he will give you a set of rules about what your behavior can be and then cannot be once you would be released from any prison sentence you may receive.

Second, if you were to violate the terms and conditions, in other words, if you break those rules, then your release could be revoked which means you could go back to prison without receiving any credit for time that you already had spent out of prison and following those supervised release rules.

Do you understand?

A.    Yes.

Q.    Has anyone made a promise to you as to exactly what your sentence in this case will be?

A.    No.

Q.    Do you understand it's the District Judge and only the District Judge who decides your sentence?

A.    Yes.

Q.    In deciding that sentence, our District Judge is required to consider what are called the *United States Sentencing*

*Guidelines*" as well as the punishment range that is within the *Guidelines*.  However, neither of those things are binding on him.

Do you understand?

A.   Yes.

Q.   Our laws require that any sentence the District Judge decides on for your case does six different things:

Reflects the seriousness of the offense;

Promotes respect for the law;

Provides just punishment;

Affords adequate deterrence;

Protects the public; and then finally,

Provides you with any needed educational or vocational training, medical care or other correctional treatment.

Do you understand?

A.   Yes.

Q.   Have you and your attorney talked about how these *Sentencing Guidelines* might possibly apply in your case?

A.   Yes.

Q.   It is those *Sentencing Guidelines* that provide and the District Judge also takes into account some other factors when he decides a sentence in your case.  Those factors are:

The actual conduct in which you engaged;

To consider any victim of the offense;

The role that you played;

And then whether you have accepted responsibility for your relevant conduct or if you have attempted to obstruct justice.

Do you understand?

A. Yes.

Q. Do you understand, also, that your criminal history is an important factor under the *Guidelines*?

A. Yes.

Q. When you and your attorney talked about the *Sentencing Guidelines* and how they might apply in your case, did he give you some type of estimate or opinion as to what the different guideline ranges in your case might be if you went to trial on all four counts in the Indictment versus if you were to accept this plea offer as to just one count?

A. Yes.

Q. Okay. And do you understand that when your attorney gave you his opinion about the *Guidelines* and their ranges and how they might work, that he can't promise you that opinion is correct, even though he does have a lot of experience in Criminal Law and with the *Guidelines*?

A. Yes.

Q. Are you aware the reason that he can't make a promise about the *Sentencing Guidelines* is because our District Judge will have the ability to do something different with your sentence than what your attorney's opinion is?

A. Yes.

Q.    Neither our District Judge, nor your attorney can determine exactly what that guideline range will be in your case until after a probation officer writes what is called the "Presentence Report."  Sometimes it's also called the "PSR."

Once that report is written, both you and the Government will have a chance to read it, and then you can also make objections to the facts that are in that report as well as to the recommended guideline range in there.

Do you understand?

A.    Yes.

Q.    Are you aware that no one, not even your attorney, can predict ahead of time what your sentence in the case will be?

A.    Yes.

Q.    Do you understand that after it is determined what that guideline range is for your case, the District Judge will still have the authority to decide on a sentence that's more severe than what's called for under the *Guidelines*?

A.    Yes.

Q.    Do you understand that under the terms of your Plea Agreement -- it's within Paragraph 12 -- you have given up your right to an appeal except for in those circumstances that were specifically listed out in the paragraph?

A.    Yes.

Q.    Do you understand that parole for this offense to which you intend to plead "guilty" has been eliminated?

So that means if you are sentenced to prison, when you're released, it's not to parole.  Instead, you're placed under the terms of supervised release.

A.   Yes.

Q.   Do you understand that if the sentence our District Judge decides on for your case is more severe than what you have expected, you still would be bound by a plea of "guilty" today and you would not have the right to withdraw that plea?

A.   Yes.

Q.   In just a moment, Mr. Jones, I'm going to ask how you plead in your case.  Before I ask that question, though, is there anything you want to talk to your attorney about?

A.   No.

Q.   Having been informed of your rights and the possible consequences of pleading "guilty," how do you plead to Count One of the Indictment?

A.   Guilty.

Q.   Before I can recommend to our District Judge that he accepts the plea of "guilty" you have entered, I have to ask that second set of questions I mentioned at the very beginning of the hearing.  Those are the questions to make certain that we have facts in your case to support a guilty plea.

In that regard, I also have an electronic copy of the same Factual Resume that appears is on the table in front of you.  We can have that document read out loud or you can waive the

reading of your Factual Resume.

What do you prefer?

A.    Waive it.

THE COURT:  Counsel, do you join in the waiver?

MR. WOOD:  I do, Your Honor.

Q    (By The Court:) At any time in the past, sir, did you have a chance to read your entire Factual Resume?

A.    Yes.

Q.    Do you understand everything that's in the document?

A.    Yes.

Q.    Do you have any changes or corrections to make?

A.    No.

THE COURT:  Counsel, would you have any changes to make?

MR. WOOD:  No, Your Honor.

Q    (By The Court:) I've looked at the last page of your Factual Resume, and it does appear you signed that document as well a few weeks ago.  Is that correct?

A.    Yes.

THE COURT:  Counsel, did you sign, also?

MR. WOOD:  I did, Your Honor.

Q    (By The Court:) Mr. Jones, do you admit under oath today that this Factual Resume in your case is true and correct in every respect?

A.    Yes.

Q.   Do you also admit under oath that you committed each of the essential elements of the offense charged in Count One of the Indictment?

A.   Yes.

THE COURT:  Being satisfied with the responses that have been given during the hearing, I make the following finding on the record:

In the case of the *United States of America versus Ernest Jones, III,* Cause No. 2:23-CR-8-Z-BR-1, I find that Mr. Jones is fully competent and capable of entering an informed plea.  His plea of "guilty" to Count One of the Indictment is a knowing and voluntary plea that is supported by an independent basis in fact that contains each of the essential elements of the offense charged by Count One of the Indictment.

The Court is recommending that his plea of "guilty" be accepted by our District judge.  And if it is, he then will be adjudged guilty of this offense charged in Count One of the Indictment.

I have just a couple of questions to ask at the very end, Mr. Jones.  Before I do that, though, I want to explain three things to you in terms of what you can expect will happen after court is done this morning.

The very first thing that will happen is I will sign a document called "Report and Recommendation Concerning Guilty Plea."  That report is how I communicate to the District Judge

to let him know that we had a hearing where you pled "guilty" today and also that I'm recommending he accepts your guilty plea. You will have 14 days after today to make any kind of objection that you would want to make to the fact I'm recommending he accepts the guilty plea.

The second thing that will happen is the District Judge will enter his own Order that sets out the schedule for everything that happens after today in your case. That Scheduling Order will give you the date that your sentencing hearing takes place.

During sentencing, the District Judge will hear from you, from your attorney, and then up to three witnesses on your behalf, if you would like. You also could have people write letters to him that talk about you and your character. Your attorney knows how to help you coordinate that. And as long as the Judge receives those type of letters on time, he will read everything before your sentencing hearing that has been sent in to him.

Finally, there will be a probation officer who writes that Presentence Report I had talked about in one of my questions. That report or PSR is written in order to help the District Judge decide on what the appropriate sentence should be for your case. So for that reason, it is important to you that you cooperate with all the aspects of that report. You may even be asked to have a meeting with the probation officer who writes

it to help get parts of it put together, and your attorney can be there with you during any meeting like that.

Finally, it is important, also, to cooperate with that officer who writes the report because he or she will have the ability to recommend a decrease in your offense level for what is called "acceptance of responsibility."

And then the entire report that is being put together is what helps to serve as the way to calculate that sentencing guideline range for your case.

I can't give you any kind of legal advice about your case, Mr. Jones. Obviously, that's your attorney's role. With that said, though, do you have questions about anything we covered in court today?

THE DEFENDANT:  No.

THE COURT:  Okay.  Were you able to understand everything I asked you?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  That's everything we have for your case this morning, Mr. Jones.  Good luck as you start into this very last part of it, sir.

You will be remanded into custody.

(Hearing adjourned at 9:43 AM.)

23

## CERTIFICATE OF OFFICIAL REPORTER

I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the electronically-recorded proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 23rd day of February, 2024.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER